1
2
3
4
5
6
7
8                   **UNITED STATES DISTRICT COURT**

9                  **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   SOIL RETENTION PRODUCTS, INC., a      )   Case No.:  3:20-cv-02453-BEN-WVG
     California corporation,                )
12                                          )   **ORDER:**
                      Plaintiff,            )
13                                          )
     v.                                     )   **(1) GRANTING DEFENDANT'S**
14                                          )   **    MOTION TO DISMISS THE**
     BRENTWOOD INDUSTRIES, INC., a         )   **    COMPLAINT PURSUANT TO**
15   Pennsylvania corporation; DOES 1-25,   )   **    RULE 12(b)(6) OF THE FEDERAL**
     inclusive,                             )   **    RULES OF CIVIL PROCEDURE**
16                                          )
                      Defendant.            )
17                                          )   **(2) DENYING DEFENDANT'S**
                                            )   **    MOTION TO STRIKE PUNITIVE**
18                                          )   **    DAMAGES PURSUANT TO**
                                            )   **    RULE 12(f) OF THE FEDERAL**
19                                          )   **    RULES OF CIVIL PROCEDURE**
                                            )
20                                          )
                                            )
21                                          )
                                            )   **[ECF No. 3, 4, 6]**
22   _____ )

23   **I.      INTRODUCTION**

24          Plaintiff SOIL RETENTION PRODUCTS, INC., a California corporation

25   ("Plaintiff" or "SRP") brings this action for, *inter alia*, breach of contract against Defendant

26   BRENTWOOD INDUSTRIES, INC., a Pennsylvania corporation ("Defendant" or

27   "Brentwood").  Complaint, ECF No. 1-2 ("Compl.").

28          Before the Court is Defendant's Motion to Dismiss the Complaint Pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure and Motion to Strike the Punitive Damages Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure (the "Motion"). ECF No. 3.  Plaintiff opposed.  ECF No. 4.  Defendant replied.  ECF No. 6.

The motions were submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure.  ECF No. 7. After considering the papers submitted, supporting documentation, and applicable law, the Court **GRANTS** Defendant's Motion to Dismiss and **DENIES** Defendant's Motion to Strike as moot.  Plaintiff has fourteen (14) days to file an amended complaint with respect to any claims for which the Court has granted leave to amend.

## II.   BACKGROUND
### A.   Statement of Facts[1]

Plaintiff "manufactures plantable concrete systems, including Drivable Grass®, Verdura® and Enviroflex® systems."  Compl. at 2,[2] ¶ 6.  Starting in 2006, Plaintiff engaged Defendant to help in the design and manufacturing of vacuum formed molds that Plaintiff would use in the manufacturing process.  *Id.* at 4, ¶ 7.

As time passed, Plaintiff sought to expand and streamline its manufacturing processes and distribution channels for its patented product by entering into license agreements with third parties to expand its territory throughout the United States.  Compl. at 4, ¶ 7.  In order to accomplish this, Plaintiff needed modifications to its production molds and turned to Defendant.  *Id.*

In May 2018, Plaintiff and Defendant initiated discussions in which Plaintiff detailed its business plan and requested Defendant's assistance in modifying the molds so Plaintiff's plan could be executed.  Compl. at 4, ¶ 8.  Plaintiff alleges that Defendant "understood

---

[1]      The majority of the facts set forth are taken from the operative complaint, and for purposes of ruling on Defendants' motion to dismiss, the Court assumes the truth of the allegations pled and liberally construes all allegations in favor of the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).
[2]      Unless otherwise indicated, all page number references are to the ECF generated page number contained in the header of each ECF-filed document.

SRP was relying upon it to timely deliver modified production molds." *Id.* According to Plaintiff, these discussions transpired for several months until August 2018, when Plaintiff asked if Defendant could employ injection molding to create the molds. *Id.* Plaintiff pleads that "David Reinhart of Brentwood advised SRP the process would be too expensive (up to $350,000) and he was confident Brentwood could accomplish SRP's goals using Thermoforming to create the molds." *Id.*

On September 7, 2018, Defendant sent Plaintiff a written quote to design and make modified molds for Plaintiff at a cost of $5,656.90, which Plaintiff accepted the following day." Compl. at 4, ¶ 9. "By September 20, 2018, the parties had agreed upon terms for a sample mold, production mold, and related parts." *Id.* at 4, ¶ 10. On September 24, 2018, Plaintiff accepted the terms, agreeing that Defendant would supply Plaintiff with a sample redesign of the mold at a cost of $5,656.90, using thermaforming, and this agreement was confirmed by written purchase order. *Id.*

Plaintiff alleges that on December 11, 2018, "[a]fter multiple, unexplained delays," Defendant forwarded Plaintiff the samples. Compl. at 4, ¶ 11. "Once textures were chosen for the sample mold in January 2019, it took Brentwood until March 2019 to ship the sample molds." *Id.*

Plaintiff alleges that by April 2019, Defendant "committed to manufacturing the production mold and parts within 8-9 weeks." Compl. at 4-5, ¶ 12. Plaintiff further pleads that in late June 2019, it received the items and informed Defendant's representative that the features did not conform to the shop drawing Plaintiff had approved. *Id.* Plaintiff alleges that the next month, Defendant's representative visited Plaintiff's manufacturing plant in Perris, California to deliver new samples and to learn more about Plaintiff's needs. *Id.* at 5, ¶ 12. However, Plaintiff rejected Defendant's samples. *Id.* Plaintiff pleads that on August 14, 2019, "[f]ollowing more delays and excuses," Plaintiff received the further modified materials and immediately reported problems to Defendant. *Id.* at 5, ¶ 13. Plaintiff alleges that "[a]round this same time, SRP learned Brentwood was developing a product to compete with SRP's Drivable Grass®." Compl. at 5, ¶ 14.

"In September 2019, after receiving third-party feedback [Defendant] quoted [Plaintiff] for a price for injection molding." Compl. at 5, ¶ 15. "Nevertheless, Brentwood chose to continue trying Thermoforming." *Id.* In October 2019, "[f]ollowing additional discussions between the parties," Defendant sent Plaintiff more sample molds, which Plaintiff approved for etching. *Id.* In December 2019, Plaintiff received production molds, which Plaintiff alleges were (1) received over a year after placing its order and (2) of an inferior quality to the samples Plaintiff had approved because they crumbled easier than prior samples and could not be used. *Id.*

In January 2020, Plaintiff placed another order with Defendant for vacuum formed molds. Compl. at 5, ¶ 16. In February 2020, Plaintiff received the molds it had ordered but alleges they were inferior or weaker than the previous molds. Plaintiff alleges that prior to hiring Defendant to make the Thermoforming molds, it had relied upon and used Defendant's vacuum formed molds. *Id.* However, Plaintiff alleges that the vacuum formed molds Defendant provided in February 2020 were inferior (weaker) than the vacuum formed molds Defendant had been providing since 2006. *Id.* at 5, ¶ 17. Plaintiff alleges that "[t]his doubled the amount of time required to manufacture [its] products, which has added to [its] damages through increased production costs and additional manufacturing delays." *Id.* Plaintiff claims it has sustained over $1.4 million in unspecified damages. Compl. at 6, ¶ 25.

### B.   **Procedural History**

On May 26, 2020, Plaintiff filed this action against Defendant in the San Diego Superior Court, alleging nine causes of action[3] for (1) breach of contract; (2) fraud; (3)

---

[3]   Plaintiff's complaint and Defendant's motion use the term "cause of action." While California superior courts, which utilize the code pleading standard, use the term "cause of action," federal courts, which operate under the notice pleading standard, refer to what would otherwise be known in the superior courts as "causes of action" as "claims for relief." *See*, *e.g.*, *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264-70, n. 2 (9th Cir. 2006) (providing that "[a] 'cause of action' under California law is equivalent to a 'claim' under federal law, although the California system is based upon the old code pleading system, ... [u]nder the federal system, 'the word "claim" denotes the allegations that give

-4-

negligent misrepresentation; (4) unfair business practices in violation of California Business and Professions Code, section 17200 *et seq.*, (the "UCL"); (5) breach of covenant of good faith and fair dealing; (6) intentional interference with contractual relations; (7) negligent interference with prospective economic relations; (8) intentional interference with prospective economic relations; and (9) misappropriation of trade secrets.  ECF No. 1 at 2, ¶¶ 1-2.  The prayer for relief also includes a claim for punitive damages.  Compl. at 2, ¶ 3.

On December 23, 2020, Defendant filed the instant motion to dismiss and strike the complaint.  Motion, ECF No. 3 ("Mot.").  On January 25, 2021, Plaintiff filed its opposition.  Opposition, ECF No. 4 ("Oppo.").  On February 1, 2021, Defendant replied.  Reply, ECF No. 6 ("Reply").

## III.   LEGAL STANDARD

### A.   Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible to survive a motion to dismiss).  The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff.  *Manzarek*, 519 F.3d at 1031.  However, a court is not required to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

---

rise to an enforceable right to relief'").  Thus, because district courts analyze motions to dismiss under whether the plaintiff has pled a viable "claim for relief" (rather than "cause of action") and no longer use the label "cause of action," the Court refers to Plaintiff's "causes of action" as "claims for relief." *Id.*

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with it. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). However, under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss to a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002). Consequently, "[p]laintiffs may plead themselves out of court by attaching exhibits inconsistent with their claims because the court may disregard contradictory allegations." Phillips & Stevenson, *California Practice Guide: Federal Civil Procedure Before Trial* § 9:212a (The Rutter Group April 2020) Phillips, § 9:212a; *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007–08 (9th Cir. 2015) (noting that courts "need not accept as true allegations contradicting documents that are referenced in the complaint").

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Ninth Circuit has a liberal policy favoring amendments, and thus, leave to amend should be freely granted. *DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility. *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where . . . further amendment would be futile.").

### B.   Motion to Strike

FRCP 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Immaterial matters are "those which ha[ve] no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (internal quotation marks omitted). Impertinent

matters "do not pertain, and are not necessary, to the issues in question." *Id.* (internal quotation marks omitted). "Motions to strike are generally regarded with disfavor." *Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1085 (S.D. Cal. 2017) (Bashant, J.). They "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Id.* The decision to grant a motion to strike lies within the discretion of the trial court. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

## IV.   DISCUSSION

Defendant argues this Court should grant Defendant's Motion to Dismiss all claims for relief pled in the Complaint because Plaintiff has failed to plead facts creating a plausible claim for relief for any of the claims pled. Defendant also asks the Court to grant its Motion to Strike Plaintiff's request for punitive damages, which is alleged in Plaintiff's fraud claim, because Plaintiff's fraud claim is subject to dismissal, so the punitive damages claim within it should be dismissed. Mot. at 18:19-19:10 (citing CAL. CIV. CODE § 3294). Defendant contends that even if Plaintiff could allege plausible claim for relief for fraud, Plaintiff failed to plead facts showing acts by a corporate officer or director that plausibly show oppression, fraud, or malice, as is required under California law. *Id.* at 18:19-19:10 (citing CAL. CIV. CODE § 3294). Plaintiff responds to both motions in a conclusory manner by simply reciting the allegations of the Complaint and summarily stating they are adequately pled, without providing any analysis of legal authority supporting that position.

As discussed below, the Court finds it appropriate to grant Defendant's Motion to Dismiss. Because the Court dismisses the fraud claim *with prejudice*, and therefore, the punitive damages allegations, the Court denies the Motion to Strike as moot.

### A.   Motion to Dismiss

Plaintiff's Complaint pleads two contract-based claims; three fraud-based claims; three interference-based; and one claim for misappropriation of trade secrets. *See* Compl. The Complaint pleads the bare elements of each claim for relief. The problem lies in the

-7-

fact that since the Supreme Court's decision in *Twombly* in 2007, a plaintiff must provide "more than . . . a formulaic recitation of the elements of a cause of action." 550 U.S. at 555.

Defendant argues the Court should grant its Motion to Dismiss because (1) each of Plaintiff's claims "fails to allege any actionable harm with the requisite specific to satisfy the pleading stands" articulated under *Twombly/Iqbal*; (2) the economic loss doctrine bars all of Plaintiff's claims, other than the claims for breach of contract and misappropriation of trade secrets, because the barred claims seek redress "for alleged conduct that is identical to the alleged breach of contract claim"; (3) "as to any of the Plaintiff's claims premised on an alleged fraud, *to* wit, the second, third and fourth causes of action, Plaintiff fails to plead fraud with the specificity required under Rule 9(b)"; and (4) "Plaintiff has not alleged any adequate conduct that would entitle it to punitive damages." Mot. at 2:10-26.

Plaintiff opposes by arguing that Defendant's (1) "inexcusable failure to perform pursuant to the terms of the parties [sic] agreement and unreasonable delay constitutes a material breach of the agreement," (2) "conduct in fraudulently inducing SRPs to enter into the subject agreement and then taking steps to deprive SRP of the benefit of its bargain also renders it liable for breach of the implied covenant of good faith and fair dealing," and (3) "acts and omissions had foreseeable ripple effects across SRO's business and interfered with SRP's existing and prospective business partners and customers, causing additional damages to SRP." Oppo. at 2:3-10.

In reply, Defendant responds that Plaintiff's Opposition "merely reiterated the allegations of its Complaint" and "failed to address the deficiencies in the Motion to Dismiss." Reply at 2:2-4. Defendant asserts that Plaintiff's effective failure to oppose Defendant's arguments constitutes an abandonment of those claims and warrants this Court granting the Motion to Dismiss. *Id.* at 2:8-14 (citing *Qureshi v. Countrywide Home Loans, Inc.*, 2010 WL 841669, *6 n.2 (N.D. Cal. Mar. 10, 2010) (deeming plaintiff's failure to address, in opposition brief, claims challenged in a motion to dismiss, an "abandonment of those claims")).

As discussed below, the Court finds that Plaintiff has failed to plead sufficient facts to state a claim for relief under the *Twombly*/*Iqbal* standard as to the contract-based claims, fraud-based claims, interference-based claims, and misappropriation of trade secrets claims. The Court also concludes that Plaintiff's claims for fraud and negligent misrepresentation are barred as a matter of law under the economic loss doctrine, and as such, dismisses those claims *with prejudice*.

### 1. ***Contract Based Claims***

As outlined below, the allegations in the Complaint fail to plausibly set forth allegations to state a claim for breach of contract because they inadequately plead the terms of the alleged agreement. With the breach of contract claim failing to adequately establish the contractual relationship and nothing more than conclusory allegations supporting the remaining contract based claim for breach of the implied covenant of good fair and fair dealing, the Court dismisses that claim as well.

#### a. *First Claim for Breach of Contract*

Defendant contends that: (1) Plaintiff never alleges Defendant accepted the purchase order or provided samples in fulfillment of the purchase order, and (2) "[t]he vast majority of conduct alleged in Plaintiff's general allegations has no bearing on the terms of the purchase order, but to a series of events that occurred after a sample was sent to Plaintiff pursuant to the purchase order." Mot. at 10:9-12, 11:11-13. Defendant contends that "Plaintiff merely recites the elements of a breach of contract claim and asks the Court to decipher which of the vague allegations constitute said breach." *Id.* at 10:23-25. Plaintiff responds by conclusorily arguing that it alleged (1) the existence of a contract, Oppo. at 4:16-18 (citing Comp., ¶¶ 9-10); (2) Plaintiff's performance, *id.* (citing Compl., ¶ 23); (3) Defendant's breach, *id.* (citing Compl. ¶¶ 11-13, 15-17, 18-19), and (4) damages caused to Plaintiff by Defendant's breach, *id.* (citing Compl. at ¶ 25). In its Reply Brief, Defendant argues that "[t]he Opposition simply does not address these factual and legal deficiencies, and only regurgitates the conclusory allegations of its Complaint, which again, are devoid of the facts necessary to state a viable claim for breach of contract." Reply at 3:18-21.

Defendant contends that (1) the conduct Plaintiff alleges as the breach in the Complaint (i.e., Defendant shipped goods after the Purchaser Order's deadline) "was not a term of any eventual agreement between the parties" and (2) Defendant "did indeed perform, whatever the unasserted contractual terms may have been." *Id.* at 3:10-15.

A plaintiff pleading a claim for relief for breach of contract under California law must show (1) a legally enforceable contract between the parties; (2) the plaintiff's performance or excuse for non-performance; (3) the defendant's breach of that contract (e.g., by failing to perform or performing inadequately); and (4) damage to the plaintiff caused by the defendant's breach. *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1062 (9th Cir. 2017); Mot. at 10:19-22; Oppo. 5:11-16 (citing same).

As a preliminary matter, the Court finds the alleged contract involves the sale of goods, and therefore, applies the California Commercial Code. CAL. COMM. CODE § 2102 ("Unless the context otherwise requires, "this division applies to transactions in goods"). Applying the relevant law, the Court finds Plaintiff's claim for breach of contract fails because Plaintiff has failed to plead facts that would plausibly establish even the first element of breach of contract.

i.   A contract

Defendant first argues that, "[a]lthough the Complaint identifies the unsigned purchase order as 'the Contract,' the allegations recite merely that the parties entered into an unspecific agreement on terms, and that Plaintiff created a purchase order." Mot. at 10:27-28-11:1. Further, Defendant argues that Plaintiff fails to "allege that Defendant accepted the purchase order, or that Defendant provided samples in fulfillment of the purchase order." *Id.* at 11:1-3. Thus, Defendant disputes agreeing to the terms Plaintiff alleges and contends a valid contract never came into existence. *Id.* at 10:26-27

Paragraph 9 of Plaintiff's Complaint defines the parties' "Contract" as the September 24, 2018 written Purchase Order No. P-11670 for the purchase of various molds, which shows an order date of September 24, 2018, lists Defendant as the Vendor, and shows Plaintiff under the "Ship To" section (the "Purchase Order"). Compl. at 4, ¶ 10;

Mot. at 10:27-28.  Plaintiff attached the alleged "contract" at issue as Exhibit "1" to the Complaint.  Fed. R. Civ. P. 10(C) (explaining that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"); *see also Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 964 (9th Cir. 2014) (affirming the lower court's consideration of exhibits attached to a complaint on a motion to dismiss).  The purported "contract" attached to the complaint is not a fully executed contract but rather an unsigned purchase order.  Because this is a diversity jurisdiction case,[4] the Court applies the law of the forum state pertaining to contracts.  *Estate of Darulis v. Garate,* 401 F.3d 1060, 1062 (9th Cir. 2005).  Thus, under California choice-of-law rules, the Court applies California state law.  *Hurtado v. Super. Crt.,* 11 Cal.3d 574, 580, 581 (1974).

"A contract for sale of goods may be made in any manner sufficient to show agreement, *including conduct by both parties which recognizes the existence of such a contract*."  Cal. Comm. Code § 2204(1) (emphasis added); *see also Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017).  Further, "[a]n agreement sufficient to constitute a contract for sale may be found even though the moment

---

[4]     The Notice of Removal alleges diversity jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states, and the amount-in-controversy exceeds $75,000.00.  NOR at 4, ¶ 16.  Courts are required to examine jurisdiction, even *sua sponte* at all stages of litigation.  *B.C. v. Plumas Unified School Dist.,* 192 F.3d 1260, 1264 (9th Cir. 1999).  In this case, the Court questions whether Plaintiff's Complaint alleges sufficient facts to plausibly suggest damages exceeding the amount in controversy requirement for diversity jurisdiction.  *See, e.g.*, *Morris v. Hotel Riviera, Inc.*, 704 F.2d 1113, 1115 (9th Cir. 1983) (dismissing the case because 'the Innkeeper Statute clearly limits the amount of damages" such that the amount in controversy requirement was not met).  A plaintiff who rightfully rejects non-conforming goods may recover any part of the purchase price paid (*i.e.*, in this case, $5,656.90), and may also seek, *inter alia*, (1) the cost of "cover" by reasonably purchasing replacement goods and recovering the difference between the cost of the goods and the contract price, plus incidental or consequential damages, Cal. Comm. Code § 2712, or (2) seek specific performance or replevy the goods, *id.* at § 2711(2).  Based on the allegations of the Complaint, it appears implausible that Plaintiff would be entitled to damages in the amount sought ($1.4 million), Compl. at 6, ¶ 25, when the amount paid under the Contract was $5,656.90, *id.* at 4, ¶ 9.  However, in light of the Court's decision to grant leave to amend, the Court declines ruling on this issue.

of its making is undetermined." CAL. COMM. CODE § 2201(2).  "Even though one or more terms are left open a contract for sale does not fail for indefiniteness if [1] *the parties have intended to make a contract* and [2] *there is a reasonably certain basis for giving an appropriate remedy*." CAL. COMM. CODE § 2204(3) (emphasis added).  Finally, the California Commercial Code provisions incorporate the general common law provisions on contract formation.  *See, e.g.*, CAL. COMM. CODE § 1103(b) (providing that where a specific provision of the California Commercial Code does not displace general contract law, "the law relative to capacity to contract" supplement the provisions of the code).  Under California common law, a contract is formed when there are (1) parties capable of contracting, (2) mutual consent, (3) a lawful object, and (4) sufficient cause or consideration." *Grimes v. New Century Mortg. Corp.*, 340 F.3d 1007, 1011 (9th Cir. 2003) (McKeown, J., dissenting) (citing CAL. CIV. CODE § 1550).

Neither party argues that the parties were incapable of contracting, the alleged contract involved an unlawful object, or the contract lacked sufficient consideration, and as such, the Court finds that these elements are not at issue.  *See generally* Mot.; Oppo.  This leads the Court to the final element of a contract: consent.  "The consent of the parties to a contract must be: 1. Free; 2. Mutual; and 3. Communicated by each to the other." CAL. CIV. CODE § 1565.  Here, Defendant disputes agreeing to the terms Plaintiff alleges and contends a valid contract never came into existence.

Courts determine mutual consent and the intention of the parties "from the written terms of the contract alone, so long as the contract language is clear and explicit and does not lead to absurd results." *Revitch*, 977 F.3d at 717 (internal quotations omitted).  Here, the relevant contract would need to demonstrate agreement/conduct by both parties (e.g., mutual assent), recognizing the existence of a contract.  Without taking judicial notice of the validity of the contract, the Court takes judicial notice of the fact that the Purchase Order attached to the Complaint is not a fully executed a contract signed by either party.[5]

---

[5]    A court may take judicial notice of the fact that a contract was signed.  *E.g.*, *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (holding that although the district

-12-

As to the terms of the alleged contract, Plaintiff alleges that on September 7, 2018, Defendant sent Plaintiff a written quote to design and make modified molds for Plaintiff at a cost of $5,656.90, which Plaintiff accepted the following day," or on September 8, 2019. Compl. at 4, ¶ 9; Mot. at 7:14-16; Oppo. at 3:8-9.   Next, Plaintiff alleges that "[b]y September 20, 2018, the parties had agreed upon terms for a sample mold, production mold, and related parts."   Compl. at 4, ¶ 10; Oppo. at 3:9-11.   Notably, Plaintiff never pleads what exactly, those agreed upon terms were.   *But see Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 979-81 (N.D. Cal. 2014) (dismissing the plaintiff's claim for breach of contract where "there [was] no way for the Court to know even generally what the terms of the contract or contracts were, or even how many agreements are at issue").

Finally, Plaintiff pleads that on September 24, 2018, Plaintiff accepted the (unknown) terms, agreeing that Defendant would supply Plaintiff with a sample redesign of the mold at a cost of $5,656.90, using thermaforming, and this agreement was confirmed by written purchase order.   Compl. at 4, ¶ 10; Mot. at 7:14-16; Oppo. at 3:11-12.   These allegations make it unclear whether mutual assent was reached on September 8, 20, or 24, 2018.   Plaintiff also alleges that by April 2019, Defendant "committed to manufacturing the production mold and parts within 8-9 weeks."   Compl. at 4-5, ¶ 12; Oppo. at 3:15-16. This further confuses the issue of when mutual assent was reached as this appears to be after the parties reached their original agreement (whether the original agreement was reached on September 8, 20, or 24, 2018) and raises issues of whether Plaintiff intends to plead this commitment constituted a modification of the original contract, and if so, whether that modification was valid.

An examination of the alleged "contract" results in even more confusion: The

---

court could take judicial notice of "the *fact* that [a document] was signed," it erred in taking "judicial notice of *disputed* facts stated in public records"), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see also Wilbur v. Locke*, 423 F.3d 1101, 1112 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010) (taking judicial notice of a consummated agreement in the form of an executed compact).

Purchase Order shows an order date of September 24, 2018.  ECF No. 1-2 at 15.  Under "Required Date," it shows "9/24/2018,"[6] under Ship Via, it indicates "Best Way," under "Terms," it says "Net 30 days,"[7] and it states, "F.O.B."[8]  Thus, the Purchase Order required Plaintiff to make payment 30 days from the invoice date.  However, part of pleading breach of contract requires Plaintiff plead performance.  Thus, Plaintiff's performance would mean payment according to the alleged contract (e.g., the Purchase Order), but Plaintiff never pleads facts indicating when, if ever, it made payment, and if so, the amount of money paid.  Notably, the alleged contract contains no terms expressly stating when the

---

[6]      "Required Date" generally means the date by which a buyer's ordered goods must reach the buyer.  However, in this case, that construction would mean the molds, which Plaintiff alleges needed to be manufactured, Compl. at 4-5, ¶ 12, would need to be delivered to Plaintiff on the same day the order was made.

[7]      "Net 30 Days" generally requires a purchaser to tender payment within 30 days of receiving the invoice.  *See, e.g.*, *Avery Dennison Corp. v. Home Tr. & Sav. Bank*, No. 02-2007 LRR, 2003 WL 22697175, at *1 (N.D. Iowa Nov. 7, 2003) (providing that "[t]erms of 'net 30 days' means that Group One was allowed 30 days from the invoice date to pay that invoice").

[8]      Unless otherwise agreed, the term F.O.B., which is an express term and means "free on board," at a named place, "is a delivery term under which," when the term is (1) F.O.B. the place of shipment, which is otherwise known as a "shipment contract," the seller must, at the seller's place of business, ship the goods by tendering delivery or putting the goods into possession of a carrier as well as bearing the expense and risk of putting them into the possession of a carrier or (2) F.O.B. the place of destination, also known as a "destination contract," the seller must bear the risk and expense of transporting the goods to the place of destination and tender delivery along with documents of title at the destination.  CAL. COMM. CODE § 2319(1), (a)-(b).  "The general rule is that a contract containing neither an F.O.B. term nor any other term explicitly allocating loss is a shipment contract."  *Wilson v. Brawn of Cal., Inc.*, 132 Cal. App. 4th 549, 556, fn. 4 (2005).  If a contract simply states that goods are to be shipped to the buyer without using the F.O.B. designation, then, a shipment contract is presumed.  *Id.*  "Thus a 'ship to' term has no significance in determining whether a contract is a shipment or destination contract for risk of loss purposes."  *Id.* at 555.  Here, the Purchase Order indicates the goods are to be shipped to Plaintiff at Plaintiff's address via "Best Way" and "F.O.B.," without specifying whether it is meant to be F.O.B., the place of shipment or the destination, meaning the term "F.O.B., the place of destination" is never used, and the "contract" is presumed to be a shipment contract.  *Wilson*, 132 Cal. App. 4th at 556.

molds must be delivered to Plaintiff and lacks any express warranties.  However, under the relevant California Commercial Code gap fillers, where a contract is silent on the issue, "[t]he time for shipment or delivery or any other action under a contract if not provided in this division or agreed upon shall be a reasonable time."  CAL. COMM. CODE § 2309(1).

Next, Plaintiff alleges that on December 11, 2018, "[a]fter multiple, unexplained delays," Defendant forwarded Plaintiff the samples.  Compl. at 4, ¶ 11; Mot. at 7:20-21; Oppo. at 3:13-14.  However, "[o]nce textures were chosen for the sample mold in January 2019, it took [Defendant] until March 2019 to ship the sample molds."  Compl. at 4, ¶ 11; Oppo. at 3:14-15.  These allegations are entirely inconsistent and make it unclear whether Defendant provided the goods (e.g., the sample molds) by December 11, 2018 or March 2019.  The issue becomes further confused as Plaintiff later pleads that in late June 2019, it received the items and informed Defendant's representative that the features did not conform[9] to the shop drawing Plaintiff had approved.  Compl. at 4-5, ¶ 12; Oppo. at 3:16-18.  Plaintiff also alleges that in July 2019, Defendant's representative visited Plaintiff's manufacturing plant in Perris, California to deliver new samples and gain additional information regarding Plaintiff's needs, but Plaintiff rejected[10] the new samples as well. Compl. at 5, ¶ 12; Mot. at 7:20-24; Oppo. at 3:18-20.

---

[9]    Unless the contract at issue is an installment contract or provides otherwise, where the goods are non-conforming the buyer has option of (1) rejecting the whole delivery, (2) accepting the whole delivery, or (3) accepting "any commercial unit or units and reject[ing] the rest."  CAL. COMM. CODE § 2601.  Alternatively, instead of rejecting the goods, a buyer may also exercise the "right to cure."  CAL. COMM. CODE § 2508.

[10]    If a buyer rightfully rejects goods, then, the contract is cancelled, and the buyer is (1) excused from further performance; (2) can recover any part of the purchase price paid; and (3) can recover damages for total breach measured by the difference between the contract price and the price paid to cover.  CAL. COMM. CODE § 2712.  However, the buyer must reject the goods "within a reasonable time after their delivery or tender" and seasonably notify the seller.  CAL. COMM. CODE § 2602(1).  Here, if Plaintiff rejected the goods, as alleged, the contract would be cancelled; yet, the Complaint alleges additional orders and deliveries from Defendant, leaving the Court to guess whether these deliveries were part of a new contract, or part of the Purchase Order, which means Plaintiff exercised its right to cure rather than right to reject the goods.

Next, Plaintiff pleads that on August 14, 2019, "[f]ollowing more delays and excuses," Plaintiff received the further modified materials and immediately reported problems to Defendant.  Compl. at 5, ¶ 13; Mot. at 7:22-24; Oppo. at 3:21-23.  Plaintiff pleads that the following month, "[i]n September 2019, after receiving third-party feedback [Defendant] quoted [Plaintiff] for a price for injection molding."  Compl. at 5, ¶ 15.  This allegation raises the question of why Plaintiff continued to place orders with Defendant if it had been so unsatisfied with the previous orders and whether these new orders are part of the original Purchase Order.  *See, e.g.*, *China Nat. Metal Prod. Imp./Exp. Co. v. Apex Digital, Inc.*, 141 F. Supp. 2d 1013, 1024 (C.D. Cal.) ("Certainly continuing to order and then sell those goods you are complaining about would cause a seller to seriously question whether you in fact have rejected the contract."), *order set aside on other grounds,* 155 F. Supp. 2d 1174 (C.D. Cal. 2001).   Plaintiff alleges that in October 2019, "[f]ollowing additional discussions between the parties," Defendant sent Plaintiff more sample molds, which Plaintiff approved for etching.  Compl. at 5, ¶ 15; Mot. at 7:24; Oppo. at 3:26-27.  Next, Plaintiff pleads that in December 2019, it received production molds, which were received over a year after placing its order, and which were allegedly of an inferior quality to the samples Plaintiff had approved because they crumbled easier than prior samples and could not be used.  Compl. at 5, ¶ 15; Mot. at 77:24-26; Oppo. at 3:27-4:2. Despite the allegedly unsatisfactory sample molds and production molds, Plaintiff alleges that in January 2020, it placed yet another order with Defendant for vacuum formed molds.  Compl. at 5, ¶ 16; Mot. at 7:26-27; Oppo. at 4:3-5.  Plaintiff alleges that in February 2020, it received these new molds but alleges they were inferior or weaker than the previous molds.  Compl. at 5, ¶ 17; Mot. at 7:26-28; Oppo. at 4:7-10.

Despite Plaintiff's allegations of unsatisfactory products and delays, Purchase Order No. P-11670 shows that Plaintiff purchased a total of $5,656.90 in goods consisting of: (1) ten 3x3 concrete form mold sample parts at a price of $198.19 each for $1,981.90 and (2) one 2x2 Sample Aluminum Mold at a price of $3,675.00.  Although unclear, Defendant's motion appears to raise the issue of the Statute of Frauds, which is a valid issue the

1   allegations of the Complaint leave unaddressed.  Mot. at 11:10-12.

2       Section 2201 of the California Commercial Code requires contracts for the sale of

3   goods "for the price of $500 or more," such as the Purchase Order, to be in writing in order

4   to be enforceable.  CAL. COMM. CODE 2201(1).  The requirements to satisfy this Statute of

5   Frauds requirement are that if a contract involves the sale of goods for $500 or more, it

6   must include "[1] some writing sufficient to indicate that a contract for sale has been made

7   between the parties and [2] signed by the party against whom enforcement is sought."  *Id.*

8   (emphasis added); *see also* CAL. COMM. CODE § 1201(b)(37) (defining "signed" as "using

9   any symbol executed or adopted with present intention to adopt or accept a writing").  "A

10  writing is not insufficient because it omits or incorrectly states a term agreed upon but the

11  contract is not enforceable . . . beyond the quantity of goods shown in the writing."  *Id.*

12      In the present case, Plaintiff contends the Purchase Order constitutes the contract

13  between the parties.  However, neither party signed this document.  As such, there is no

14  one document satisfying the Statute of Frauds requirement.  However, there are four (4)

15  exceptions to the Statute of Frauds requirement, which are outlined under the (1) written

16  confirmation rule, (2) specially manufactured goods exception, (3) admission in judicial

17  proceedings exception, and (4) goods accepted or payments made exception.  CAL. COMM.

18  CODE § 2201(2)-(3).

19      Defendant argues that "[i]f the purchase order was a contract between the parties, it

20  was a unilateral offer by Plaintiff (a merchant[11]), which Defendant (a merchant) would

21  have accepted by tendering the items in the purchase order."  Mot. at 11:10-12.  Defendant

22  asserts that its "acceptance of the offer outside of the 30 day term in the purchase order

23  would have modified[12] this term rather than constituted a breach of the unilateral offer."

24

25  [11]    "Merchant" is a term used under the California Commercial Code, which means "a
    person who deals in goods of the kind or otherwise by his occupation holds himself out as
26  having knowledge or skill peculiar to the practices or goods involved in the transaction."
    CAL. COMM. CODE § 2104(1).  Plaintiff's Complaint does not plead whether Plaintiff
27  believes Plaintiff or Defendant qualify as merchants under the Commercial Code.

28  [12]    Separate and aside from whether a contract was formed, Defendant raises issues of

-17-

Mot. at 11:12-15 (citing *Steiner v. Mobil Corp.*, 20 Cal. 3d 90, 101-02 (1977). By raising issues of offer acceptance and arguing for contract formation by tendering the goods, Defendant appears to be raising the confirmatory memoranda rule and specially manufactured good exception.

      Under the confirmatory memoranda exception to the Statute of Frauds requirement, if (1) between merchants, (2) one merchant, within a reasonable time, sends "a writing in confirmation of the contract and sufficient against the sender" and (3) that writing is received by the other party, (a) who "has reason to know its contents" and (b) fails to send a written notice of objection to the writing's contents within ten days of receiving it, then, that writing satisfies the Statute of Frauds requirement. CAL. COMM. CODE § 2201(2). Through this exception, if a merchant fails to read mail, it does so at its own peril because an invoice or document sent to that merchant could be used against the merchant as a contract. As applies to this case, if Plaintiff prepared the Purchase Order, sent it to Defendant, and Defendant failed to object, the Purchase Order could be enforced against Defendant, assuming it met the other requirements of a valid contract. However, it is unclear who prepared the Purchase Order.

      Under the second exception to the Statute of Frauds, a contract that fails to meet the

---

modification. After parties have a writing purporting to define the terms of their contract, a subsequent contract is not sufficient to establish the parties' consent to the terms of that subsequent writing to the extent the terms of the subsequent writing adds to or differs from the earlier writing. *Hebberd-Kulow Enterprises, Inc. v. Kelomar, Inc.*, 218 Cal.App.4th 272, 274-76 (2013), *rehearing and review denied*.) In the absence of both parties' express assent to the additional or varying terms of the subsequent writing, there is a default rule the parties intended only those terms to which both parties agreed to constitute their agreement *along with* any terms implied by the California Commercial Code. *Id.*; *see also India Paint & Lacquer Co. v. United Steel Products Corp.*, 123 Cal. App. 2d 597, 607 (1954) ("The prevailing rule is that an invoice, standing alone, is not a contract; and a buyer is ordinarily not bound by statements thereon which are not a part of the original agreement."). While the Court makes no finding on the validity of Defendant's argument but notes that Plaintiff's complaint fails to plead sufficient facts to allow the Court to determine whether Plaintiff's allegations only pertain to the original Purchase Order, and if not, what basis Plaintiff has for pleading a modification.

requirements it will be upheld if: (1) "the goods are to be specially manufactured for the buyer"; (2) "are not suitable for sale to others in the ordinary course of the seller's business"; and (3) the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement." CAL. COMM. CODE § 2201(3)(a).  There is also another exception for "goods for which payment has been made and accepted or which have been received and accepted (Section 2606)." CAL. COMM. CODE § 2201(c).  However, because of the lack of clarity on whether Plaintiff, in fact, accepted the goods, rejected the goods, exercised its right to cure, or even paid for the goods, the Court is unable to evaluate whether this exception applies.

In sum, Plaintiff's complaint fails to plead sufficient acts to satisfy even the first element of breach of contract.  Having failed to satisfy the first element, the Court need not analyze the remaining elements but does so because the Court is granting one additional attempt to amend this claim, and the remaining elements are also insufficiently plead.

ii.   <u>Plaintiff's Performance</u>

The Complaint alleges that Plaintiff "performed all conditions, covenants and promises required by it to be performed in accordance with the terms and conditions of the Contract."  Compl. at ¶ 23.  Beyond these conclusory allegations, Plaintiff fails to plead facts showing what its performance entailed, when Plaintiff performed, whether Defendant accepted the performance, and whether that performance complied with the relevant provisions of the California Commercial Code governing payment and acceptance or rejection of the allegedly non-conforming goods.

iii.   <u>Defendant's Breach</u>

Defendant argues that "[e]ven assuming the purchase order constituted a contract between the parties, Plaintiff has not alleged what conduct by Defendant amounted to a breach." Mot. at 11:5-6.  Defendant correctly points out Plaintiff's complaint fails to plead facts allowing the Court to determine how Plaintiff alleges Defendant breached the alleged contract, and if those alleged actions breach the Purchase Order and/or any provisions

-19-

governing transactions in goods under the California Commercial Code—such as those governing trade usage, course of dealing, and the remedies available when a buyer rejects non-conforming goods.  Thus, the Complaint fails to plead sufficient facts to state a breach.

iv.   <u>Damages</u>

The Complaint pleads that "[a]s a direct and proximate result of Brentwood's breach of the Contract, SRP has been damaged in a sum which is currently unascertainable, but is no less than $1.4 million," *id.* at ¶ 15.  The California Commercial Code provides for very specific remedies for the breach of contracts for the sale of goods.  *See* COMM. CODE § 2711, *et seq.*  As is, Plaintiff has pled damages in such a way that the Court is unable to determine whether those damages pled are recoverable under contract law generally, much less the Commercial Code.  Moreover, those damages should not be "unascertainable."

In sum, to adequately state a claim for relief for breach of contract, "it is absolutely essential to plead the terms of the contract either in haec verba or according to legal effect." *See, e.g.*, *Langan*, 69 F. Supp. 3d at 979-81 (dismissing the breach of contract claim *with leave to amend* because it failed to clearly plead the terms of the contract). "While it is unnecessary for a plaintiff to allege the terms of the alleged contract with precision, the Court must be able generally to discern at least what material obligation of the contract the defendant allegedly breached." *Id.* (internal citations omitted).

For instance, in *A.B. Concrete Coating Inc. v. Wells Fargo Bank, Nat'l Ass'n*, the Eastern District of California dismissed the plaintiff's breach of contract claim with leave to amend.  No. 2:20-CV-211-EFB, 2020 WL 5820613, at *4 (E.D. Cal. Sept. 30, 2020). The court reasoned that the plaintiff's "vague allegations [were] insufficient to establish the existence of an enforceable contract" where the plaintiff "did not allege when the contract was formed, nor the performance required of each party under the contract," and "the contract's nature or purpose cannot be discerned from plaintiff's minimal factual allegations." *Id.*; *see also UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1107 (C.D. Cal. 2015) ("Although counterclaimants allege a general 'agreement' that Inflight's of the sound recordings was 'acceptable' they provide no details concerning

-20-

the terms of the agreement."). Just as in *A.B. Concrete* and *UMG Recordings*, the allegations in the Complaint "provide no details concerning the terms of the agreement," and Plaintiff's "vague allegations [are] insufficient to establish the existence of an enforceable contract." 2020 WL 5820613, at *4; 117 F. Supp. 3d at 1107.

In this case, Plaintiff's Complaint  makes it entirely unclear (1) when the alleged contract was formed; (2) whether all terms of the contract were contained within the writing alleged to constitute the contract, and if not, how any other terms are plausibly part of the contract under the Statute of Frauds and Parol Evidence Rule; (3) whether Defendant consented to the alleged agreement and how consent was provided; (4) what, in terms of performance, was required from each party (e.g., what goods Defendant was required to provide and when); and (5) the contract's nature (e.g., whether it covered goods, services, or both, and whether any warranties—express or implied—were provided). Thus, like the *A.B. Concrete* court, this Court dismisses the breach of contract claim *with leave to amend*.

  b.    Fifth Claim Breach of the Covenant of Good Faith and Fair Dealing

Defendant argues that because Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is premised upon the existence of a contract between the parties, and Plaintiff and has failed to adequately allege the existence of such a contract, so it should be disregarded as superfluous because no additional claim is actually stated. Mot. at 13:25-15:6.   Plaintiff responds by conclusorily arguing it "has alleged the existence of a contract (Comp. ¶¶ 9-10), SRP's performance or excuse of performance (Comp. ¶ 23), Brentwood's conduct preventing SRP from receiving the benefits of the contract (Comp. ¶¶ 11-13, 15-17, 18-19), Brentwood's failure to act in good faith (Comp. ¶¶ 11-13, 15-17, 18-19) and damages caused to SRP (Comp. ¶ 25)." Oppo. at 7:11-15.

 "Like an express contract claim, the elements of an implied-in-fact contract claim are [1] a valid implied-in-fact contract, [2] the plaintiff's performance or excuse for nonperformance, [3] the defendant's breach of the agreement, and [4] the resulting damages to plaintiff." *Iconlab Inc. v. Valeant Pharm. Int'l, Inc.*, No. 816CV01321JLSKES, 2017 WL 7240856, at *6 (C.D. Cal. Apr. 25, 2017), *aff'd sub*

-21-

*nom. Iconlab, Inc. v. Bausch Health Companies, Inc.*, 828 F. App'x 363 (9th Cir. 2020) (applying California law).   Thus, "[a] claim for breach of the implied covenant of good faith and fair dealing requires the same elements [as a claim for breach of contract], except that instead of showing that defendant breached a contractual duty, the plaintiff must show, in essence, that defendant deprived the plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time of contracting."  *Santana v. BSI Fin. Servs., Inc.*, No. 20CV1577-GPC(WVG), 2020 WL 6150473, at *11 (S.D. Cal. Oct. 20, 2020) (Curiel, J.) (quoting *Patera v. Citibank, N.A.*, 79 F. Supp. 3d 1074, 1090 (N.D. Cal. 2015)). "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated."  *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990), *as modified on denial of reh'g* (Oct. 31, 2001)

Plaintiff's complaint alleges only that (1) Defendant "had a duty to act fairly and in good faith toward" Plaintiff with respect to the alleged contract," Compl. at 9, ¶ 51; (2) at all relevant times, Plaintiff "fully performed its obligations and duties under the Contract and to the extent any such obligations and duties under the Contract had not been performed, SRP was excused from performing said obligations or duties as a result of Brentwood's actions or omissions, or both," *id.* at 9, ¶ 52; (3) Defendant "has and continues to breach its duty by unfairly interfering with SRP's right to receive benefits under the Contract," *id.* at 9, ¶ 53; and (4) "[a]s a direct, foreseeable, and proximate result of" Defendant's actions and omissions, Plaintiff has incurred losses and damages, including but not limited to "lost profits, increased costs of financing, and lost  opportunity costs," *id.* at 9-10, ¶¶ 54-55.  This merely alleges the same breach discussed above.

Plaintiff has failed to plead sufficient facts to establish a contractual relationship as well as what conduct, if any, breached the implied covenant.  *See, e.g.*, *Langan*, 69 F. Supp. 3d at 980-81 (holding that the allegations in the complaint failed to "allege with sufficient specificity the conduct that allegedly breached the implied covenant").  Further, to the

extent Plaintiff's claim fails to "go beyond the statement of a mere contract breach," which relies "on the same alleged facts," dismissal is also appropriate. *Careau*, 222 Cal. App. 3d at 1395. Thus, Plaintiff's complaint has failed to plead sufficient facts to state a plausible claim for relief for breach of the implied covenant of good faith and fair dealing. The Court dismisses this claim *with leave to amend*.

### 2. *Fraud Based Claims*

#### a. *Plaintiff's Second Claim for Fraud and Third Claim for Negligent Misrepresentation*

Defendant argues that Plaintiff's fraud and negligent misrepresentation claims vaguely reference "a 'series of verbal representations' by Defendant which are alleged to be misrepresentations," and "such non-specific allegations are insufficient to state a claim for fraud." Mot. at 12:6-8. The Court agrees with Defendant that Plaintiff fails to plead sufficient facts to state a claim for relief for fraud; however, the Court need not analyze the elements of each claim given dismissal of these two claims is appropriate on another basis: The claims are barred by the economic loss rule. To support this argument, Defendant contends that Plaintiff's second through eights claims for relief (1) are not "based upon an independent legal duty, but are rather based entirely on the alleged breach of the contractual duties and resulting contract damages"; (2) do not "allege any misconduct based upon acts that are distinct from the alleged breach of contract"; and (3) "should be dismissed with prejudice since it is patent from the face of the Complaint that Plaintiff has no basis for any theory of liability apart from breach of contract." *Id.* at 17:8-25.

When a plaintiff alleges only economic loss without allegations of some form of injury, the economic loss rule may bar recovery. *North American Chemical Co. v. Super. Crt.*, 59 Cal. App. 4th 764, 780 (1997). "Economic loss" consists of "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (concluding the economic loss rule did not bar the plaintiff's fraud and misrepresentation

claims because they were independent of the alleged breach of contract) (internal quotation omitted).  The economic loss rule prohibits recovery of such purely economic losses where the alleged tort claim merely restates contractual obligations:

> Where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic losses.'  This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts.

*Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 481 (N.D. Cal. 2020) (quoting *Robinson*, 34 Cal. 4th at 988).  "The predicate for applying the economic loss rule is breach of a contract."  *See id.*  Thus, this doctrine "requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise."  *Robinson*, 34 Cal. 4th at 988.  The purpose of this rule is to "prevent[ ] the law of contract and the law of tort from dissolving into the other."  *Robinson*, 34 Cal. 4th at 988 (internal quotation omitted).

As for Plaintiff's fraud claim, to survive the economic loss rule's bar, a plaintiff pursuing a fraud claim for relief must plead that the fraud arises from the "defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages *independent of* the plaintiff's economic loss."  *Robinson*, 34 Cal. 4th at 993 (emphasis added).

In *ChromaDex, Inc. v. Elysium Health, Inc.*, the Court dismissed a fraudulent deceit claim as barred by the economic loss rule and denied leave to amend.  301 F. Supp. 3d 963, 969-70 (C.D. Cal. 2017).  Just as Defendant acted as a supplier for Plaintiff in this case, the *ChromaDex* plaintiff was the sole supplier of two active ingredients in the defendant's only product: a dietary supplement.  *Id.* at 965.  After a period of negotiation, the parties

entered into a supply agreement.  *Id.*  After an alleged breach, the plaintiff-supplier sued for, breach of contract, fraudulent deceit, and misappropriation of trade secrets, claiming the defendant allegedly misrepresented it was ramping up business and needed a large volume of product quickly for the purpose of inducing the plaintiff to provide an unusually large supply of product that would last it through and serve as leverage in any dispute.  *Id.* at 969.  The court held that the plaintiff's fraud claim did not allege that the defendant's actions caused the plaintiff "to face any independent liability to third parties."  *Id.* at 970. Rather, the plaintiff's injury was simply harm resulting from the contract—namely, that it owed the money pursuant to the purchase order.  *Id.*

Here, Plaintiff's claims pertain to Defendants' alleged failure to remedy the product purchased (e.g., the molds), and likewise, relate to the alleged contract.  Like the fraudulent deceit claim arising out of the purchase order in *ChromaDex*, which the court determined alleged nothing more than "harm resulting from the contract," 301 F. Supp. 3d at 970, Plaintiff's fraud claim also arises out of a dispute with a supplier and similarly alleges nothing more than "harm resulting from the contract."

As to Plaintiff's negligent misrepresentation claim, the practical effect of the economic loss "rule is that claims for negligence involving only economic loss are generally dismissed in favor of breach of contract claims."  *See, e.g.*, *Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1092 (C.D. Cal. 2017) (granting the defendant's motion to dismiss the plaintiff's negligence claim *without leave to amend* because the negligence claim was barred by the economic loss rule).  Ample courts facing similar factual allegations have dismissed such allegations *with prejudice*.  *See, e.g.*, *Hsieh v. FCA US LLC*, 440 F. Supp. 3d 1157, 1163 (S.D. Cal. 2020) (Whelan, J.) (granting the defendant's motion to dismiss the tort-based claims while denying leave to amend because "the Complaint fails to plead a tort based on conduct independent of the breach of contract / warranty" as "all of Plaintiff's tort claims are based on Defendants' failure to fix Plaintiff's vehicle as required by the warranty"); *Agricola Baja Best, S. De. R.L. de C.V. v. Harris Moran Seed Co.*, 44 F. Supp. 3d 974, 988 (S.D. Cal. 2014) (Benitez, J.) (dismissing the

plaintiff's negligence and product liability claims based on the economic loss rule because the plaintiff had not "demonstrate[d] harm above and beyond a broken contractual promise" but rather "produced evidence the seed it purchased from Semillas lacked the Intermediate Resistance promised and this defect in the seed caused the tomato crop to fail"); *Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983, 994-95, 998 (E.D. Cal. 2012) (dismissing the plaintiff's fraud and negligent misrepresentation claims *with prejudice* because the plaintiff's fraud claim sought the same damages[13] "as those arising from the alleged breach of contract," and as a result, were barred by the economic loss rule).

In this case, like its fraud claim, "Plaintiff's negligent misrepresentation claims allege nothing more than the product it purchased . . . did not live up to the expectations that had been created by Defendant's advertising."  *See, e.g.*, *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C-13-1803 EMC, 2013 WL 4530470, at *9-11 (N.D. Cal. Aug. 26, 2013) (finding the plaintiff's negligent misrepresentation claims "governed by the same rule as the negligence claim," meaning the plaintiff could "seek to recover under this claim for the damage to the radios, but may not seek recovery of its economic losses"). However, in its Opposition, Plaintiff argues that the economic loss "doctrine is more applicable to product liability or construction defect cases."  Oppo. at 8:24-9:2.  This argument fails for many reasons.  First, in its reply, Defendant correctly points out that Plaintiff's contention that the economic loss doctrine only applies to cases alleging personal injury or property damages "is not the law."  Reply at 5:19-21 (citing Oppo. at 9). Defendant notes that the economic loss rule has been applied in a myriad of cases that involved neither property damage nor personal injury.  *Id.* at 6:3-12.  Defendant is correct in this regard as Plaintiff's only cited authority for this proposition has been superseded by statute.  Plaintiff relies on the case of *Aas v. Super. Crt.*, 24 Cal. 4th 627, 632 (2000),

---

[13]   Because of the lack of factual support in Plaintiff's damages allegations, Compl. at 6, ¶ 25, 7, ¶ 33, 8, ¶¶ 36, 44, the Court is unable to evaluate whether the damages sought are "the same."

*superseded by statute as stated in S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 402 (2019), which held that due to the economic loss rule, homeowners and a homeowners association may not "recover damages in negligence from the developer, contractor and subcontractors who built their dwellings for construction defects that have not caused property damage." However, two years later, the California Legislature passed the Right to Repair Act, CAL. CIV. CODE §§ 895-945.5 (the "RRA"), in direct response to the *Aas* decision.  *See, e.g.*, *McMillin Albany LLC v.Super. Crt.*, 4 Cal. 4th 241, 246-57 (2018) (noting that the RRA grants "homeowners the right to sue for deficiencies even in the absence of property damage or personal injury").  Thus, Plaintiff's argument that the economic loss rule only operates as a bar to claims for personal injury or construction defect is simply incorrect. *See, e.g.*, *Fumatex Inc. v. Tafford Uniforms LLC*, No. 213CV02508SVWPLA, 2013 WL 12205632, at *3 (C.D. Cal. June 10, 2013) (dismissing the plaintiff's fraud claim *without prejudice* as barred by the economic loss doctrine and rejecting the plaintiff's contention that the doctrine "only operates to bar claims brought by purchasers of goods in the context of defective product cases").

Even if the Court construes Plaintiff's argument as contending that the economic loss rule is inapplicable because physical injury is not an element of a claim for negligent misrepresentation, Oppo. at 8:24-9:2, this argument fails as well.  While this is true, courts have nonetheless dismissed negligent misrepresentation claims as barred by the economic loss rule where the complained-of misrepresentations were simply those made in the course of forming the contract.  *See, e.g.*, *Astrium S.A.S. v. TRW, Inc.*, 197 F. App'x 575, 577-78 (9th Cir. 2006) (finding district court did not err in finding the negligent misrepresentation claim barred by economic loss rule); *Crystal Springs Upland Sch. v. Fieldturf USA, Inc.*, 219 F. Supp. 3d 962, 970 (N.D. Cal. 2016) (concluding the economic loss rule barred the plaintiff's claim for negligent misrepresentation because the plaintiff alleged that the defendants "made affirmative misrepresentations about the effectiveness of their product, but [had] not alleged that their reliance on those representations opened them up to independent personal liability"); *JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F.

Supp.2d 1029, 1042-43 (N.D. Cal. 2012) (concluding the economic loss rule barred the plaintiff's fraud and negligent misrepresentation claims where "[t]he tort claims consist of nothing more than [the defendant's] alleged failure to make good on its contractual promises"); *United Guar. Mortgage Indem. Co. v. Countrywide Fin. Corp.,* 660 F.Supp.2d 1163, 1184-85 (C.D. Cal. 2009) (finding the plaintiff's negligence and negligent misrepresentation claims barred by the economic loss rule where "the alleged misrepresentations are not conceptually distinct from the contract").

As such, the Court finds Plaintiff's Second Claim for Relief for Fraud and Third Claim for Relief for Negligent Misrepresentation are barred by the economic loss doctrine.

As to the remaining claims, Defendant argues that the Third through Eighth Claims for Relief are also barred by the economic loss doctrine.  Mot. at 2:15-19.  However, Plaintiff's interference-based torts appear "to be an exception to the economic loss doctrine." *Casden Builders Inc. v. Entre Prises USA, Inc.*, No. CV 10-2353 ODW, 2010 WL 2889496, at *5 (C.D. Cal. July 21, 2010).  As such, having already concluded below that Plaintiff failed to plead facts sufficient to state a claim for relief with respect to Plaintiff's interference-based claims, the Court declines ruling on whether these claims are barred by the economic loss doctrine.  Additionally, with respect to Plaintiff's other fraud based claim arising under the UCL, numerous cases within the Ninth Circuit have indicated that claims brought under California's UCL are not subject to the economic loss doctrine. *See, e.g.*, *Diamos v. Walmart Inc.*, No. 219CV05526SVWGJS, 2020 WL 1942322, at *3 (C.D. Cal. Jan. 9, 2020) (denying the defendant's motion to dismiss the UCL claim on the basis of the economic loss doctrine).  Because the Court finds those claims subject to dismissal, the Court declines addressing whether they are barred by the doctrine as well.

b.   *Fourth Claim for Unfair Business Practices*

Defendant argues that Plaintiff's claim for relief brought under the UCL "is entirely conclusory and fails to state a claim under *Iqbal* and *Twombly*."  Mot. at 13:10-12. Specifically, Defendant argues because Plaintiff's UCL alleges fraudulent and unlawful conduct by pleading Defendants violated the California Civil Code provisions prohibiting

fraud but Plaintiff fails to allege a plausible claim for relief for fraud, the UCL claim must fail as well. *Id.* at 13:10-24. As with Defendant's other arguments, Plaintiff responds by arguing its UCL claim is based upon Defendant's fraudulent statements made to Plaintiff, which violate California law, and thus, this claim is adequately pled. Oppo. at 6:20-25.

California's UCL prohibits business acts or practices that are (1) fraudulent, (2) unlawful, or (3) unfair. *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 878 (N.D. Cal. 2010); *see also Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) (applying California law). Each prong of the UCL constitutes a separate and distinct theory of liability. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). Plaintiff's opposition only addresses the prongs of unlawfulness and fraud, *see generally* Oppo. at 6:20-25 (arguing that Plaintiff's unfair business practices claim is based upon Defendant's fraudulent statements, which is also a violation of California law), and as such, the Court construes Plaintiff as having waived any argument that Defendants' actions fall under the unfair prong, *see Franchise Tax Bd. of California v. Hyatt*, 139 S. Ct. 1485, 1491, n. 1 (2019) (deeming an argument waived where the defendant failed to raise an issue in the opposition brief).

"A 'business act or practice' is 'unlawful' under the unfair competition law if it violates a rule contained in some other state or federal statute." *Sandoz Inc. v. Amgen Inc.*, 137 S. Ct. 1664, 1673 (2017) (citing *Rose v. Bank of America, N. A.,* 57 Cal. 4th 390, 396 (2013)). Where a plaintiff cannot state a claim under a "borrowed" law, he or she cannot state a UCL claim either. *See*, *e.g.*, *Ingels v. Westwood One Broad Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) ("A defendant cannot be liable under § 17200 for committing unlawful business practices without having violated another law"); *see also Silvas v. E-Trade Mortgage Corp*., 514 F. 3d 1001 at 1007 n.3 (9th Cir. 2008). Other courts within this district have held "a common law violation such as breach of contract is insufficient' to support a claim under the unlawful prong of section 17200." *Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d 1058, 1088 (S.D. Cal. 2020) (Miller, J.) (internal quotations omitted); *see also Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1043-44 (9th Cir.

-29-

2010) (finding the plaintiff failed to state a claim under the unlawful prong of the UCL where his complaint alleged the defendant "violated the common law of unfair competition and breached his contract," but "[t]hese practices alone do not amount to a violation of the 'unlawful' prong of § 17200").

Plaintiff's complaint alleges that (1) Defendant "engaged in numerous acts and practices related to the Contract" that "constitute business practices subject to the unfair competition statute under" the UCL, Compl. at 9, ¶ 47, (2) Defendant's "business practices were unlawful and deceptive" as Defendant's "false representations violate civil and criminal law under the California Code prohibiting acts of fraud," *id.* at 9, ¶ 48; and (3) "[a]s a direct and proximate result of the foregoing conduct, Plaintiff has suffered actual damages to be determined by this Court according to proof," *id.* at 9, ¶ 49.  However, these conclusory allegations fail to state any ongoing unlawful, unfair, and fraudulent business acts.  Rather, the alleged actions Plaintiff complains of amount to nothing more than a breach of contract.

The "fraudulent" prong applies only where a business act or practice actually misleads a plaintiff.  *Hall v. Time, Inc*., 158 Cal. App. 4th 847, 849 (2008).  To plead a claim under the UCL based on fraud, a plaintiff must allege the existence of a scheme to mislead consumers and that each misrepresentation to each consumer conformed to that scheme.  *Committee on Children's Television v. General Foods Corp*., 35 Cal. 3d 197, 211 (1983).  It must also be shown that members of the public "are likely to be deceived."  *Saunders v. Super. Ct.,* 27 Cal. App. 4th 832, 839 (1994).

In the present case, Plaintiff's allegations that Defendant "engaged in numerous acts and practices related to the Contract" that constitute business practices subject to the UCL, Compl. at 9, ¶ 47, is not sufficient to state a claim for relief.   Plaintiff fails to plead what acts specifically qualify as unfair business practices or how or why those practices fall under the unlawful or fraudulent prong.  Plaintiff also fails to allege any scheme by Defendant and/or how it misled consumers.  If Plaintiff intends to pursue the fraudulent prong, Plaintiff must plead sufficient facts to state a claim for fraud.

Finally, Plaintiff seeks "actual damages," Compl. at 9, ¶ 49, but the remedies for violation of the UCL are limited to injunctive relief and restitution—a plaintiff may not recover monetary damages. *Chambers v. Whirlpool Corp.*, No. 16-56666, -- F.3d --, 2020 WL 6578223, at *7 (9th Cir. Nov. 10, 2020); *Cortez v. Purolater Air Filtration Prod. Co.*, 23 Cal. 4th 163, 173 (2000). "Restitution is the 'return [of] money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person.'" *Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1077 (S.D. Cal. 2019) (Anello, J.) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1140 (2003)). Where a plaintiff pursuing a UCL claim essentially seeks damages rather than the return of money in which the plaintiff has an identifiable interest, allowing the plaintiff to recover such relief under the UCL would convert the UCL to "an all-purpose substitute for a tort . . . action, something the Legislature never intended." *See, e.g.*, *Nat'l Rural Telecommunications Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1082 (C.D. Cal. 2003), *on reconsideration in part* (June 5, 2003) (concluding the plaintiffs had failed to raise a genuine issue of material fact as to whether they had a vested interest in the money they sought to recover from the defendant, and as such, granting the summary judgment on the issue of damages under the plaintiffs' UCL) (citing *Korea Supply,* 29 Cal. 4th at 1151). Here, Plaintiff does not request an injunction and has failed to plead an identifiable interest in the money it seeks to recover. As such, Plaintiff has not pled a remedy recoverable under the UCL.

Unlike Plaintiff's fraud and negligent misrepresentation claims, Plaintiff's UCL claim does not even state "[t]hreadbare recitals of the elements of [the] cause of action." *Iqbal*, 556 U.S. at 678. Because a mere breach of contract may neither state a claim for violation of the UCL as a matter of law under the unlawful prong, *Schertzer*, 445 F. Supp. 3d at 1088, nor establish fraud, the Court dismisses this claim *with prejudice*.

### 3.   *Interference Based Claims*

Defendant argues that each of Plaintiff's interference-based claims (1) "are

-31-

indistinguishable from Plaintiff's breach of contract claim," (2) "state no basis for recovery apart from the alleged breach of contract," and (3) "are premised on the same set of operative facts and alleged duty breached (i.e. alleged breach/failure to perform under a contract)." Mot. at 6:23-27. Plaintiff responds that Defendant "was keenly aware of SRP's business plan, including its license agreements with third parties and SRP's reliance upon Brentwood and its products to further those efforts in support of SRP's business plan." Oppo. at 7:19-22 (citing Comp. ¶¶ 7-8, 28). Plaintiff elaborates that "[b]y failing to timely and adequately perform under the contract, Brentwood's acts and omissions interfered with SRP's economic relationship with its partners and licensees." *Id.* at 7:22-24. "Moreover, Brentwood undertook efforts to compete directly with SRP, disrupting SRP's relationships with current and prospective business partners and licensees (even when Brentwood knew SRP was relying upon it to implement SRP's business plan)." *Id.* at 7:24-27 (citing Comp. ¶ 14). According to Plaintiff, "[t]hese independently wrongful acts are sufficiently pled to support SRP's interference claims." *Id.* at 7:27-8:1.

As outlined below, the Court finds that Plaintiff has failed to plead sufficient facts to state a claim for relief under any of its interference claims.

a.   *Sixth Claim for Intentional Interference with Contractual Relations*

Defendant argues that the Sixth Claim for Relief (1) presupposes that Defendant knew of Plaintiff's contracts with third parties and intended to disrupt those contracts and (2) "fails to allege any conduct by Defendant apart from 'Defendant's actions or omissions, or both' as the basis of Defendant's alleged interference with Plaintiff's third party contracts." Mot. at 14:7-15.

To establish liability for tortious interference with contractual relations, a plaintiff must prove "(1) it has a valid and existing contract with a third party; (2) defendants had knowledge of the contract; (3) defendants committed an intentional act designed to induce a breach or disrupt the contractual relationship; (4) actual breach or disruption of the contract relationship occurred; and (5) damages were suffered as a result." *Sebastian Int'l,*

-32-

*Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1203 (C.D. Cal. 2001).

Plaintiff's complaint alleges that at all relevant times, (1) "there were valid contracts existing between [Plaintiff] and its partners, including licensees," Compl. at 10, ¶ 57; (2) Defendant knew or should have known of the valid contracts existing between Plaintiff and its partners, including licensees," and that Defendant's "failure to timely perform its material contractual duties and obligations . . . would disrupt [Plaintiff's] relationship with its partners, including licensees," *id.* at 10, ¶¶ 58-59; (3) Defendant "intended to disrupt the performance of these contracts or knew that disruption of performance under these contracts  was certain or substantially certain to occur," *id.* at 10, ¶ 61; (4) Defendant's "actions or omissions, or both, prevented [Plaintiff's] performance under the contract between [Plaintiff] and its partners, including licensees, and/or made [Plaintiff's] performance with those parties more expensive or difficult," *id.* at 10, ¶ 60; and (5) "[a]s a direct, foreseeable, and proximate result of [Defendant's] actions or omissions, or both, [Plaintiff] has incurred and will continue to incur harm and  damages, including, but not limited to, lost profits, lost sales, and lost opportunity costs," *id.* at 10-11, ¶¶ 62, 64.

Plaintiff fails to plead any facts (1) stating which third parties, if any, Plaintiff had a contract with; (2) suggesting how or why Defendant would have a basis for knowing that Plaintiff had a contract with third parties; (3) indicating, beyond conclusory allegations, facts making it plausible that Defendant intended to disrupt Plaintiff's relationship with third parties; (4) alleging how Plaintiff's business was interference with; and (5) facts describing Plaintiff's damages.  Such conclusory, threadbare recitals of the elements of a claim fail to suffice under the *Twombly*/*Iqbal* standard.  *Iqbal,* 556 U.S. at 686 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.").  Thus, the Court grants Defendant's Motion to Dismiss the Sixth Claim for Relief *with leave to amend.*

        b.    **_Seventh Claim for Negligent Interference with Prospective Economic Relations_**

Defendant argues that the seventh and eighth claims for relief relating to negligent

-33-

and intentional interference with prospective economic relations "are based upon the allegation that Defendant failed to timely perform the terms of the purchase order," but "Plaintiff has failed to allege that Defendant breached any term of the purchase order." Mot. at 14:13-17. However, Defendant points out that both claims require independently wrongful conduct, which Plaintiff has failed to allege. *Id.* at 14:17-21. Rather, Defendant asserts that Plaintiff's allegations for this claim plead that Defendant failed to act with reasonable care by failing to "perform its material contractual duties and obligations such as to not interfere with, delay, disrupt and/or prevent [Plaintiff's] economic relations with [Plaintiff's] partners, including licensees.'" *Id.* at 14:22-26 (citing Compl. at ¶ 69). However, Defendant avers that "[t]his allegation suggests that a material contractual duty in the purchase order was to refrain from interfering with Plaintiff's economic relations— a term that is nowhere to be found in the document." *Id.* at 14:26-28.

Indeed, the elements of negligent interference with prospective economic relations require a plaintiff to plead (1) the existence of a valid economic relationship between the plaintiff and a third party containing the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge (actual or construed) of (a) the relationship and (b) that the relationship would be disrupted if the defendant failed to act with reasonable care; (3) the defendant's failure to act with reasonable care; (4) actual disruption of the relationship; and (5) resulting economic harm. *Nelson v. Tucker Ellis, LLP*, 48 Cal. App. 5th 827, 844, n. 5 (2020), *review denied* (Aug. 19, 2020).

"[I]nterference with prospective economic advantage requires a plaintiff to allege an act that is wrongful independent of the interference itself." *CRST Van Expedited, Inc. v. Werner Enters., Inc.* 479 F.3d 1099, 1108 (9th Cir. 2007). "California courts have held that independently wrongful conduct includes actions which are independently actionable, violations of federal or state law or unethical business practices, *e.g.,* violence, misrepresentation, unfounded litigation, defamation, trade libel or trade mark infringement." *Ingrid & Isabel, LLC v. Baby Be Mine, LLC*, 70 F. Supp. 3d 1105, 1120 (N.D. Cal. 2014) (internal quotations omitted).

As to the first element, alleging the existence of an economic relationship or advantage requires alleging "a 'particular relationship or opportunity with which the defendant's conduct is alleged to have interfered' rather than vague allegations regarding a relationship with an 'as yet unidentified' customer." *Weintraub*, 2020 WL 6162801 at *8. Courts have held that a tortious interference claim that rests on "a hope of future transactions" is insufficient to support a claim of tortious interference. *Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1140 (S.D. Cal. 1998) (Brewster, J.) (holding that the "[p]laintiff must establish an actual economic relationship or a protected expectancy with a third person, not merely a hope of future transactions") (citing *Blank v. Kirwan*, 39 Cal. 3d 311, 330 (1985)). "To show [such] an economic relationship, the cases generally agree that it must be reasonably probable the prospective economic advantage would have been realized but for defendant's interference." *Song v. Drenberg*, No. 18-CV-06283-LHK, 2019 WL 1998944, at *7-8 (N.D. Cal. May 6, 2019) (granting the defendant's motion to dismiss a tortious interference with prospective business relations claim because the court found the plaintiffs' claim, which revolved around the plaintiff's loss of relationships with two third parties, was "not enough to state a claim for tortious interference with prospective business relationships").

Thus, a plaintiff must allege not just "an economic relationship between the plaintiff and some third party" but also the probability of future economic benefit to the plaintiff." *Korea Supply Co.*, 29 Cal. 4th at 1153 (2003). For instance, in *Song*, the court noted that plaintiff's complaint failed "to name a single entity or person with whom Plaintiffs might have had a prospective business relationship with which [the defendant] tortuously interfered." *Id.* Instead, the complaint made only "sweeping generalizations lacking any detail about the loss of prospective business opportunities." 2019 WL 1998944 at *7. Because the plaintiffs "merely allege[d] interference with *possible* business contracts," they had failed to point to any particular company or opportunity that was disrupted as a result of the allegedly tortious action. *Id.* at *8.

As another example, in *Weintraub Fin. Servs., Inc. v. Boeing Co.*, the court

determined that even though the plaintiffs' claims were based on the defendant's interference with the plaintiffs' relationship with a future purchaser of a property, the plaintiffs had "not sufficiently alleged the probability of the future economic benefit, for example, by alleging the general terms of the letter of intent." 2020 WL 6162801 at *8. Accordingly, the court granted the defendant's motion to dismiss the interference claims. *Id*. It also held that the plaintiffs had not "sufficiently alleged whether this loss of prospective relationship was caused by [the defendant's] conduct." *Id.*

Similarly, in this case, Plaintiff's Complaint contains nothing more than vague allegations that Plaintiff "and its partners, including licensees, were in economic relationships that would probably result in future economic benefit to [Plaintiff]." Compl. at 11, ¶ 66. In the general allegations, Plaintiff also pleads that as time passed, Plaintiff sought to expand and streamline its manufacturing processes and distribution channels for its patented product by entering into license agreements with third parties. *Id.* at 4, ¶ 7; Oppo. at 2:21-25. However, it never alleges which entities, if any, it was negotiating with, what the terms were, when the contracts were being negotiated (*e.g.*, whether those contracts fell through before, during, or after Defendant's alleged negligent acts), and how much money, if any, Plaintiff lost as a result. Thus, like the *Weintraub* claim, Plaintiff's claim fails. Although the Court's analysis could stop here, because it is granting only one attempt to perfect this claim for relief, it elaborates on the claim's residual deficiencies.

As to the second element pertaining to knowledge of the economic relations, Plaintiff's complaint contains nothing more than conclusory allegations that Defendant allegedly knew of Plaintiff's economic relations with other parties. It alleges Defendant knew or should have known of the economic relationship existing between Plaintiff and its partners, including licensees." Compl. at 11, ¶ 67. It continues by alleging those relationships would be disrupted if Defendant failed to act with reasonable care toward Plaintiff relative to the "contract" between them, by "failing to timely perform its material contractual duties and obligations as outlined herein would impact" Plaintiff's relationship with those partners, and impacted Plaintiff's ability to execute its business plan. Compl.

-36-

at 11, ¶¶ 67-68.  This does not create a plausible basis to conclude Defendant had knowledge of Plaintiff's third party economic relations.  There are no factual allegations indicating that a certain person with Plaintiff's corporation told another person with Defendant's corporation that they were relying on the molds for a contract with a specified third party.  Such conclusory allegations that Defendant knew of Plaintiff's economic relations fail to state a plausible claim for relief under the *Twombly*/*Iqbal* standard.

As to the third element requiring negligent acts, Plaintiff alleges Defendant "failed to act with reasonable care by, *inter alia*, failing to timely perform its material contractual duties and obligations such as to not interfere with, delay, disrupt and/or prevent SRP economic relations with SRP its partners, including licensees."  Compl. at 11, ¶ 69. Returning to *Weintraub*, however, the court noted that "[a]n act is not independently wrongful merely because the defendant acted with an improper motive." *Id.* (citing *Korea Supply*, 29 Cal. 4th at 1138).  Rather, "[a]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, or common law, or some other determinable legal standard." *Id.*  Here, Plaintiff's conclusory allegations likewise fail to state a plausible claim for independently wrongful conduct.  As an example, Plaintiff alleges that Defendant "failed to act with reasonable care by, *inter alia*, failing to timely perform its material contractual duties and obligations such as to not interfere with, delay, disrupt and/or prevent [Plaintiff's] economic relations with SRP its partners," Compl. at 11, ¶ 69, but nowhere in the Purchased Order does it contain such a term.

As to the fourth element of actual disruption, Plaintiff's Complaint alleges that "[a]s a result of Brentwood's actions or omissions, or both, the relationship between SRP and its partners, including licensees, was disrupted."  Compl. at 11, ¶ 70.  However, the Ninth Circuit has affirmed dismissal of tortious interference claims on similar allegations where the where the plaintiff, like Plaintiff here, "failed to plead facts either showing or allowing the interference of actual disruption to its relationship with the Customers." *Sybersound*, 517 F.3d at 1151.  Plaintiff's Complaint in this case suffers from the same deficiencies as the *Sybersound* complaint, offering nothing more than conclusory allegations, unsupported

by facts, that the plaintiff's economic relationship was disrupted.

As to the fifth element of resulting economic harm, the Complaint alleges that "[a]s a direct, foreseeable, and proximate result of [Defendant's] actions or omissions, or both, [Plaintiff] has incurred and will continue to incur harm in the form of losses, costs, damages, and expenses." Compl. at 11-12, ¶ 71. However, Plaintiff fails to allege what these losses are, such as whether there are losses identifiable to a specific contract loss.

Just like the negligent claims for relief in *Sybersound*, 517 F.3d at 1151, *Song*, 2019 WL 1998944 at *7-8, *Silicon,* 983 F. Supp. at 1313, and *Weintraub*, 2020 WL 6162801, at *7-9, Plaintiff's negligent interference with prospective economic relations claim does not plead sufficient facts to state a plausible claim for relief (and likely cannot do so based on the facts pled). Thus, the Court grants Defendant's Motion to Dismiss *with leave to amend*.

c.   *Eighth Claim for Intentional Interference with Prospective Economic Relations*

Defendant argues that "[u]nder the intentional interference with prospective economic relations cause of action, Plaintiff alleged merely that Defendant "engaged in conduct that was wrongful as outlined herein." Mot. at 14:28-15:2 (citing Compl. at ¶ 75). Defendant contents that based upon these barebones allegations, the Court has no basis to conclude "what independently wrongful conduct Defendant engaged in that interfered with Plaintiff's economic relations." *Id.* at 15:3-4.

Under California law, a plaintiff alleging a claim for relief for the tort of intentional interference with prospective economic relations or advantage must prove "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional [wrongful] acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Sybersound*, 517 F.3d at 1151.

Plaintiff's complaint alleges that at all relevant times, (1) Plaintiff "and its partners, including licensees, were in economic relationships that would *probably* result in future

economic benefit to [Defendant]," Compl. at 12, ¶ 73; (2) Defendant knew or should have known of the economic relationship existing between Plaintiff and its partners, including licensees, *id.* at 12, ¶ 74; Defendant "engaged in conduct that was wrongful as outlined herein," Compl. at 12, ¶ 75; (3) "[b]y engaging in said conduct, [Defendant] intended to disrupt the relationships or knew that disruption of the relationships between [Plaintiff] and its partners, including licensees, was certain or substantially certain to occur," *id.* at 12, ¶ 76; (4) "[a]s a result of [Defendant's] actions or omissions, or both, the relationship between SRP and its partners, including licensees, was disrupted," *id.* at 12, ¶ 77; and (5) "[a]s a direct, foreseeable, and proximate result of [Defendant's] actions or omissions, or both, [Plaintiff] was damaged as detailed herein in an amount to be proven at trial," *id.* at 12, ¶ 78.  Plaintiff's claim for intentional interference with prospective economic relations fails for the same reasons Plaintiff's claim for negligent interference with prospective economic relations failed.  As Defendant correctly points out, "beyond a rote recitation of the elements of the claim, Plaintiff has failed to allege with specificity what economic benefit it would have realized, who would have conferred this benefit, and how Defendant prevented Plaintiff from realizing this benefit."  Mot. at 15:5-7.

Plaintiff's claim for intentional interference with prospective economic relations fails to plead sufficient facts to state a plausible claim for relief.  Thus, the Court grants Defendant's Motion to Dismiss *with leave to amend*.

### 4. *Ninth Claim for Misappropriation of Trade Secrets*

Defendant argues that "Plaintiff has alleged neither the nature of the trade secret, as is required under the first element of a misappropriation claim, nor how Defendant is alleged to have misappropriated the information," and "[a]s a result this cause of action must be dismissed."  Mot. at 16:6-9.  In response, Plaintiff argues that its complaint alleges that (1) Plaintiff approached Defendant "in 2018 as part of its business plan to expand the scope of SRP's business, namely its patented Drivable Grass®," Oppo. at 8:4-5 (citing Comp. ¶8); (2) only after engaging Defendant as part of its business plan did Defendant "begin developing a product to compete with SRP's Drivable Grass®," *id.* at 8:5-7 (citing

Compl. ¶14); and (3) Defendant "improperly used SRP's proprietary information surrounding its Drivable Grass® to compete directly with SRP," *id.* at 8:7-9 (citing Compl. ¶ 81.). Thus, Plaintiff argues that "[a]s pled, SRP's ninth cause of action is sufficient to support its misappropriation claim against Brentwood." Oppo. at 8:9-11.

In response, Defendant argues that its "Motion to Dismiss demonstrates that the Misappropriation claim rests upon a single factually devoid and conclusory allegation that '[b]ased upon information and belief, Brentwood improperly used and/or disclosed [Soil Retention]'s trade secrets.'" Reply at 3:25-4:1 (citing Compl., Exhibit A, at ¶ 81). Defendant notes that even though such an allegation "fails to satisfy the requirement that a misappropriation claim must 'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade' and 'permit the defendant to ascertain at least the boundaries within which the secret lies,'" Plaintiff's Opposition fails to address this argument or explain its failure to allege the nature of the trade secret alleged to have been misappropriated. *Id.* at 4:1-9.

To plead a claim for misappropriation of trade secrets, a plaintiff must allege both the (1) existence of a trade secret and (2) subsequent misappropriation of that trade secret. *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) (Benitez, J.). As outlined below, this Court finds that Plaintiff's allegations fail to plead sufficient facts to support a plausible claim for either the existence of a trade secret or the misappropriation of a trade secret.

### a. *The Existence of a Trade Secret*

Defendant argues that Plaintiff's Opposition "provides no further clarification regarding the nature of the trade secret, but merely parrots the vague allegation that 'Brentwood improperly used [Soil Retention]'s proprietary information surrounding its Drivable Grass® to compete directly with [Soil Retention].'" Reply at 4:10-13 (citing Oppo. at 8). Defendant contends that "[t]his allegation begs further questions in addition to the identification of the trade secret at issue, such as: how was the trade secret used, how was the alleged use improper or in competition with Soil Retention?" Reply at 4:13-15.

The existence of a protectable trade secret is necessary for a trade secret misappropriation claim under the California Trade Secrets Act ("CUTSA") as well as the federal Defend Trade Secrets Act ("DTSA").  "Federal courts in the Ninth Circuit look to *Diodes* for guidance on the applicable pleading standard for claims brought under the CUTSA."  *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 77 (N.D. Cal. 2020) (citing, *inter alia*, *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968)).  In *Diodes*, the California Court of Appeal set out the appropriate pleading standard for pleading the existence of a trade secret:

> Before a defendant is compelled to respond to a complaint based upon claimed misappropriation or misuse of a trade secret . . . , the complainant should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.  If the subject matter of the claimed trade secret is a manufacturing process, *the plaintiff must not only identify the end product manufactured, but also supply sufficient data concerning the process,* without revealing the details of it, to give both the court and the defendant reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery.

260 Cal. App. 2d at 253 (emphasis added); *see also Pellerin*, 877 F. Supp. 2d at 988.

Plaintiff's complaint alleges that at all relevant times, Plaintiff "owned patents and related proprietary information associated with SRP's Drivable Grass®," and the "information and details surrounding the design and manufacture of Drivable Grass® was, and is, a trade secret which was shared with Brentwood solely for the purpose of creating molds SRP could use in its manufacturing process and to implement its business plan. Compl. at 12-13, ¶ 80.  These allegations plead Plaintiff "owned patents and related proprietary information" associated with Plaintiff's Drivable Grass®"; yet, if the alleged information had patent protection, Plaintiff would have been entitled to sue for patent infringement but did not.  Further, while Plaintiff pleads the name of the alleged trade

-41-

secret (e.g., Drivable Grass), Plaintiff does not plead "the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade." *Diodes*, 260 Cal. App. 2d at 253.  From the allegations pled, it is unclear whether Plaintiff's trade secret covers the product itself, its components, or just the manufacturing process.  To the extent the trade secret covers the manufacturing process, Plaintiff must identify the end product manufactured beyond simply stating the name of the product.

For example, in *Pellerin*, this Court found that the counterclaim for misappropriation of trade secrets failed to plead sufficient facts to state a claim for relief and dismissed the counterclaim *without prejudice*.  877 F. Supp. 2d at 990.  Although the defendant had identified the end product (foam earplugs), it had failed to describe the manufacturing process with sufficient particularity to put the plaintiffs on notice of what the defendant claimed was the trade secret at issue.  *Id.* at 988.  Instead, the allegations simply recited the statutory definition of a trade secret and conclusorily alleged the plaintiff had access to the trade secret information.  *Id.*  However, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 989.

Just as the *Pellerin* allegations failed, which were arguably more specific and detailed than those at issue in this case, Plaintiff's allegations fail as well.  Although the Court need not analyze the second element with Plaintiff having failed to adequately plead the first element, the Court does so because it is granting leave to amend.

### b.   *Misappropriation*

As to the second element of misappropriation, the *Pellerin* Court also determined that the defendant had likewise failed to allege sufficient facts to establish misappropriation.  877 F. Supp. 2d at 989.  The Court held that first, the defendant's allegations that the plaintiff "had access to and acquired Honeywell's trade secret information" was insufficient to establish misappropriation because "[a]lleging mere possession of trade secrets is not enough."  *Id.* (citing *S. Cal. Inst. of Law v. TCS Educ. Sys.,* No. CV 10–8026 PSG (AJWx), 2011 WL 1296602, at *7 (C.D. Cal. Apr. 5, 2011)).

-42-

Second, the Court held that the defendant had failed to "allege any facts in support of the legal conclusion that Plaintiffs 'used and/or disclosed' and 'acquired and/or used' Honeywell's trade secrets or confidential information." *Id.* The Court reasoned that the defendant had not alleged any facts or circumstantial evidence beyond its allegations that the plaintiff allegedly had access to the defendant's trade secrets to establish misappropriation. *Id.* at 990.

In this case, Plaintiff's complaint alleges that Defendant (1) "knew or should have known the information SRP was sharing with Brentwood was a trade secret and, if used and/or disclosed by Brentwood, SRP would be damaged thereby" and (2) "improperly used and/or disclosed SRP's trade secrets." Compl. at 12-13, ¶¶ 80, 81. Just as the *Pellerin* Court held that "mere possession of trade secrets is not enough," 877 F. Supp. 2d at 989, this Court likewise holds that Plaintiff's allegations fail to allege any non-conclusory facts that plausibly suggest (1) Defendant used Plaintiff's alleged trade secret (whatever that trade secret may be) and (2) Plaintiff is entitled to relief.

Plaintiff's claim for misappropriation of trade secrets fails to plead sufficient facts to state a plausible claim for relief. Thus, the Court grants Defendant's Motion to Dismiss and reluctantly grants *leave to amend*.

### B.   Motion to Strike

Because the Court has granted Defendant's Motion to Dismiss the Second Claim for Relief for Fraud *with prejudice*, which is the only claim for relief that requests punitive damages, the Court denies Defendant's Motion to Strike the punitive damages allegations as moot. *See, e.g.*, *Rodriguez v. JP Morgan Chase & Co.*, 809 F. Supp. 2d 1291, 1300 (S.D. Cal. 2011) (Huff, J.) ("Because the Court dismisses Plaintiff's complaint in its entirety, the Court DENIES without prejudice as moot MTC's motion to strike.").

### C.   Leave to Amend

Plaintiff requests leave to amend if the Court grants Defendant's motion. Oppo. at 9:10-23. Defendant argues that leave to amend should be denied because Plaintiff does not "indicate what additional facts it would or could allege to cure the deficiencies in the

-43-

1   Complaint if granted leave to amend." Reply at 7:3-5.

2        Courts have broad discretion to grant leave to amend a complaint. *Nguyen v.*

3   *Endologix, Inc.*, 962 F.3d 405, 420 (9th Cir. 2020). This discretion includes the right to

4   deny leave to amend where amendment may prove to be an effort in futility. *Moore v.*

5   *Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). In determining whether a

6   plaintiff should be granted leave to amend, courts consider "the presence or absence of

7   undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous

8   amendments, undue prejudice to the opposing party and futility of the proposed

9   amendment." *Moore*, 885 F.2d at 538.

10       Here, Plaintiff originally filed this case on May 26, 2020. ECF No. 1-2 at 13. Thus,

11   the case has been ongoing for less than one year but remains in the pleading stage.

12   However, the Court does not find undue delay, dilatory motive, or repeated failure to cure

13   deficiencies by previous amendments. Nonetheless, in *Parents for Privacy v. Barr*, 949

14   F.3d 1210, 1239 (9th Cir. 2020), the Ninth Circuit affirmed the district court's denial of

15   leave to amend because "[f]urther amendment would simply be a futile exercise." It

16   reasoned that "[t]he problem with Plaintiffs' complaint, however, is not the sufficiency of

17   their factual allegations" but "[r]ather, as we have explained above, Plaintiffs' legal

18   theories fail." *Id.* There, "[a]mending the complaint [would] not change, for example, the

19   extent of the rights that are protected." *Id.*

20       Similarly, here, Plaintiff's allegations in the second, third, and fourth claims for

21   relief suffer from the same deficiencies by simply failing to state a plausible claim for

22   relief. Further, Plaintiff fails to state how or why leave to amend would cure the

23   inadequacies pointed out by Defendant. The facts, as pled, in the aforementioned claims

24   simply do not give rise to plausible claims. As such, as in *Barr*, "[f]urther amendment

25   would simply be a futile exercise" because Plaintiffs' legal theories fail as a matter of law.

26   949 F.3d at 1239. Thus, the Court exercises its broad discretion to deny leave to amend as

27   to the second, third, and fourth claims for relief, *Nguyen*, 962 F.3d at 420, but grants leave

28   to amend as to the remaining claims.

## V.   **CONCLUSION**

For the above reasons, the Court **ORDERS** as follows:

1.      Defendant's Motion to Dismiss the Complaint is **GRANTED** as follows:

a.      Plaintiff's First Claim for Relief for Breach of Contract, Fifth Claim for Relief for Breach of Covenant of Good Faith and Fair Dealing, Sixth Claim for Relief for Intentional Interference with Contractual Relations, Seventh Claim for Relief for Negligent Interference with Prospective Relations, Eighth Claim for Relief for Intentional Interference with Prospective Relations, and Ninth Claim for Relief for Misappropriation of Trade Secrets are dismissed *with leave to amend* for failure to plead sufficient facts to state a plausible claim for relief.

b.      Plaintiff's Second Claim for Relief for Fraud and Third Claim for Relief for Negligent Misrepresentation are **DISMISSED *WITH PREJUDICE*** for preclusion as a matter of law due to the economic loss doctrine.

c.      Plaintiff's Fourth Claim for Relief for Violation of the UCL is **DISMISSED *WITH PREJUDICE*** for failure to plead sufficient facts to state a plausible claim for relief.

2.      Defendant's Motion to Strike is **DENIED** as moot in light of the Court's granting of Defendant's Motion to Dismiss the fraud based claim, which is the only claim alleging punitive damages, *with prejudice*.

3.      If Plaintiff wishes to file an amended complaint, Plaintiff must do so within fourteen (14) days.  Plaintiff may not plead any claims or seek any relief not originally pled in the original complaint.  The Court cautions that if Plaintiff elects to file an amended complaint, and the Court finds the re-pled claims still fail to allege sufficient facts to plead a plausible claim for relief, absent good cause, the Court will dismiss this case *with prejudice* without granting additional leave to amend.

**IT IS SO ORDERED.**

DATED:    February 23, 2021

_____

**HON. ROGER T. BENITEZ**
United States District Judge

-45-